IGNACIA S. MORENO
Assistant Attorney General
THOMAS K. SNODGRASS, Senior Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: (303) 844-1368
Facsimile: (303) 844-1350
thomas.snodgrass@usdoj.gov

DANIEL G. BOGDEN
United States Attorney
NADIA AHMED
Special Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, NV 89101
Ph: (702) 388-6336, Fax: (702)388-6698
Nadia.Ahmed@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CV- |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CLIVEN BUNDY, | |
| Defendant. | |

Plaintiff, the United States of America, brings this Complaint for Declaratory and Injunctive Relief against Cliven Bundy ("Defendant"), stating as follows:

**INTRODUCTION**

1. Pursuant to 43 U.S.C. § 1733(b), 43 U.S.C. § 373b and 16 U.S.C. § 3, the United States seeks to enjoin Defendant's unauthorized and unlawful grazing of livestock on property owned by the United States and administered by the Secretary of the Interior through the Bureau of Land Management ("BLM") and National Park Service ("NPS").

2. The United States previously initiated legal proceedings to enjoin Mr. Bundy's trespass grazing on the Bunkerville Allotment – near Bunkerville, Nevada – in the case of <u>United States v. Cliven Bundy</u>, No. CV-S-98-531-JBR (RJJ) (D. Nev. Filed March 27, 1998). On November 3, 1998, the United States District Court for the District of Nevada issued an order permanently enjoining Mr. Bundy from grazing his livestock within the Bunkerville Allotment and ordering him to remove the remaining livestock. The order also awarded the United States trespass damages for any cattle remaining on the Allotment after November 30, 1998. Mr. Bundy appealed the District Court's decision but, on May 10, 1999, the Ninth Circuit Court of Appeals affirmed the order and injunction. Mr. Bundy subsequently failed to comply with the permanent injunction, and the United States moved to enforce the District Court's order. On September 17, 1999, the District Court entered a second order (the "1999 Order to Remove") again directing Mr. Bundy to remove his cattle from the Bunkerville Allotment, awarding trespass damages, and imposing additional monetary penalties for every day Mr. Bundy failed to remove livestock from the allotment.

3. Despite the 1999 Order to Remove, Mr. Bundy did not remove his cattle from the Bunkerville Allotment, nor has he complied with the financial penalty provision of the 1998 Order to Remove. At present, Mr. Bundy's cattle remain in trespass on the former Bunkerville Allotment. They have also moved well beyond the boundaries of that former Allotment such that they are now trespassing on a broad swath of additional federal lands in southeastern Nevada (the "New Trespass Lands"), including public lands within the Gold Butte area that are administered by the BLM, and National Park System lands within the Overton Arm and Gold Butte areas of the Lake Mead National Recreation Area ("NRA"). The United States seeks an order enjoining Defendant's unauthorized and unlawful grazing of livestock on the New Trespass Lands. In addition, the United States seeks a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant has placed or allowed cattle to graze on these lands in trespass and in violation of federal statutory and regulatory requirements. Finally, while the United States seeks relief only with respect to the New Trespass Lands, and does not seek in this action any relief in connection with the former Bunkerville Allotment, it reserves the right to

pursue further enforcement remedies in connection with the injunction previously granted in United States v. Cliven Bundy, No. CV-S-98-531-JBR (RJJ).[1]

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as Plaintiff).

5. Venue is proper in this District Court because the Defendant resides in Clark County, Nevada and all federal lands at issue are located in Clark County and Lincoln County, Nevada.

## PARTIES

6. Plaintiff is the United States of America, acting through the BLM and the NPS within the United States Department of the Interior.

7. Plaintiff is the sovereign and holds legal title to the public lands within the Gold Butte area and the National Park System lands within the Lake Mead NRA.

8. The BLM is charged by federal statute to manage, administer, and protect the public lands within the Gold Butte area pursuant to the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1701 - 1787; the Public Rangelands Improvement Act, 43 U.S.C. §§ 1901-1908; and other applicable statutes and regulations.

9. NPS is charged by federal statute to manage, administer, and protect the National Park System lands that comprise Lake Mead NRA pursuant to 16 U.S.C. §§ 460n – 460n-9.

10. Defendant Cliven Bundy owns and/or operates a livestock ranch in Clark County, Nevada, near Bunkerville, Nevada.

## BACKGROUND

### Legal Background

11. The federal government has the paramount authority to regulate and control the management and use of property belonging to the United States. This authority includes the

---

[1] Pursuant to LR 7-2.1, the United States has filed a notice of related cases concurrently with this Complaint, and will file a similar notice in United States v. Cliven Bundy, CV-S-98-531-JBR (RJJ).

3

right, authority, and obligation to protect federal lands from trespass. Federal law authorizes the United States to seek injunctive or other appropriate relief to prevent any use of federal lands in violation of pertinent regulations. 43 U.S.C. § 1733(b); 16 U.S.C. § 3.

12. The BLM regulates grazing on public lands pursuant to the Taylor Grazing Act of 1934, as amended, 43 U.S.C. §§ 315-315r; the Rangeland Management chapter of FLPMA, 43 U.S.C. §§ 1751-1753; and the Public Rangelands Improvement Act, 43 U.S.C. §§ 1901-1908. NPS regulates grazing on Lake Mead NRA lands pursuant to the National Park Service Organic Act of 1916, codified as amended at 16 U.S.C. §§ 1 et seq., and the legislation establishing Lake Mead NRA, 16 U.S.C. § 460n-3(b). The Secretary of the Interior has also promulgated regulations that, among other things, limit and otherwise regulate the occupancy and use of federal lands for grazing and livestock purposes. 43 C.F.R. Part 4100 (2005); 36 C.F.R. § 2.60.

13. Unauthorized use of federal lands constitutes an unlawful trespass. 43 C.F.R. § 2920.1-2(a); 36 C.F.R. § 2.60.

## The Gold Butte Area and the Overton/Gold Butte Area

14. The Gold Butte area in southeastern Nevada encompasses approximately 500,000 acres of public lands and other federal lands between Grand Canyon-Parashant National Monument in Arizona, the Overton Arm of Lake Mead NRA, and the Valley of Fire State Park. The area includes rugged mountains, tilted sandstone ridges, and braided washes that turn into slot canyons. The Gold Butte area includes lands administered by the BLM and adjacent lands within the Lake Mead NRA that are administered by the NPS.

15. The Overton/Gold Butte area is that portion of the Lake Mead NRA that consists of approximately 163,000 acres and encompasses (a) the area north of Echo Bay on the west side of the Overton Arm of Lake Mead to the northwestern boundary of the park, including the Overton Wildlife Management Area and Muddy River, and then east along the main body of Lake Mead to the eastern boundary of Lake Mead NRA at the Arizona border, and (b) includes the Overton and Twin Springs Proposed Wilderness Areas, and extends to the northern boundary of the NRA where the Virgin River flows into Lake Mead on NPS lands.

16. The Overton/Gold Butte area contains many sensitive and rare plant species that are directly and indirectly affected by unauthorized cattle grazing.

17. The Overton/Gold Butte area also contains several plant communities, assemblages, and soil types that are extremely rare in the Mojave Desert and are directly and indirectly affected by cattle presence, including biological soil crusts, alkali meadows, desert oasis woodlands, and gypsum barren scrub.

18. There is no authorized livestock grazing within the Nevada portion of the Lake Mead NRA, including the Overton/Gold Butte area.

19. With respect to BLM-managed lands in the Gold Butte area, these lands include seven Areas of Critical Environmental Concern ("ACECs"). An ACEC is a special management area designated by the BLM "to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources or other natural systems or processes, or to protect life and safety from natural hazards." 43 U.S.C. § 1702(a).

20. BLM has closed the public lands within the Gold Butte area (with the exception of the Lower Mormon Mesa) to livestock grazing. Clark County previously purchased and retired all grazing privileges in the area to minimize and mitigate impacts to the desert tortoise in connection with the Clark County Multiple Species Habitat Conservation Plan. Pursuant to that Plan, the U.S. Fish & Wildlife Service issued Clark County an Incidental Take Permit under Section 10 of the Endangered Species Act for development activities on other County lands within desert tortoise habitat.

21. The former Bunkerville Allotment was a grazing allotment located near Bunkerville, Nevada, that encompassed approximately 118,298 acres of public land in the Gold Butte area administered by the BLM. An additional 16,120 acres of land pertaining to the NPS's Lake Mead NRA also formed part of the former Bunkerville Allotment. The majority of public land acres comprising the former grazing allotment are located within one of the seven ACECs in Gold Butte, known as the Gold Butte (Part A) ACEC. Mr. Bundy's father at one time held a grazing preference and permit for the Bunkerville Allotment, and Mr. Bundy was an authorized representative for that permit. Following Mr. Bundy's failure to apply for renewal of

the permit in 1993 and failure to pay the requisite grazing fees, BLM cancelled the permit in 1994. As discussed in the preceding paragraph, all of the public lands within the Gold Butte area (with the exception of the Lower Mormon Mesa), including the former Bunkerville Allotment, are now closed to grazing.

22. Archeological resources located within the Gold Butte ACECs include rock shelters with blackened roofs, charcoal remnants, broken pottery, rock tools, and world-renowned petroglyphs.

23. The Gold Butte area includes two designated wilderness areas: Lime Canyon Wilderness Area is approximately 22,300 acres in the southern part of the Gold Butte area, bordered on the west by the Lake Mead NRA and on the east by the Gold Butte Back Country Byway; and Jumbo Springs Wilderness Area is approximately 4,600 acres in the extreme southern portion of the Gold Butte area, bordered on the south and the east by the Lake Mead NRA. Additionally, there are two Wilderness Study Areas in the Gold Butte area: The Million Hills Wilderness Study Area and the Virgin Mountains Instant Study Area.

24. The public lands in the Gold Butte area include many of the same sensitive and rare plant species as are located within the Lake Mead NRA, and these species are directly and indirectly impacted by cattle grazing.

25. The public lands in the Gold Butte area also contain several plant communities, assemblages, and soil types that are extremely rare in the Mojave Desert and that are directly and indirectly affected by cattle grazing, including biological soil crusts, alkali meadows and aquatic herb communities, desert oasis woodlands, and gypsum barren scrub.

**Defendant's Past and Continuing Trespass**

26. Defendant currently has no permit or any other authorization from the Department of the Interior to use or occupy federal lands for livestock grazing purposes.

27. Notwithstanding Defendant's lack of such a permit or other authorization, Defendant has persistently and continuously placed or allowed livestock to graze in the Gold Butte area and the Overton/Gold Butte area (hereafter "area federal lands"), including on the

New Trespass Lands, in the years following the 1999 Order to Remove issued in <u>United States v. Cliven Bundy</u>, No. CV-S-98-531-JBR (RJJ).

28. Between 2000 and 2011, BLM and NPS staff periodically documented continuing and recurring trespass grazing on area federal lands by Mr. Bundy's cattle, including on the New Trespass Lands.

29. From March 21-25, 2011, the BLM completed an investigation that used helicopters and ground crews in which the BLM found over 900 livestock on area federal lands spanning a distance of approximately 90 miles, including on the New Trespass Lands. More than half of these livestock did not appear to have brands or ear marks and therefore appeared to be "estray" or "feral" cattle. The remainder of the cattle were documented to have the brand or earmark registered to Mr. Bundy. Mr. Bundy has implied in correspondence that both the branded and unbranded cattle belong to him.

30. Following the comprehensive cattle count from March 21-25, 2011, the BLM sent Mr. Bundy a Notice and Order to Cease and Desist on June 8, 2011. BLM subsequently issued Mr. Bundy a Notice of Intent to Impound on July 26, 2011.

31. A follow-up helicopter count by the BLM in August 2011 found approximately 729 head of cattle remaining on area federal lands, including on the New Trespass Lands.

32. On September 20, 2011, the BLM issued Mr. Bundy a Trespass Decision, Order to Remove, and Demand for Payment, finding that Defendant's continued unauthorized grazing constituted repeated and willful trespass and assessing trespass damages and administrative costs for trespass grazing documented between May 29, 2008, and March 5, 2011, and between March 21, 2011, and August 29, 2011. Defendant did not file an appeal from that decision. Nor did Defendant remove his cattle from the BLM managed lands.

33. On November 10, 2011, the NPS issued to Defendant a letter stating that Defendant's cattle were in trespass on area federal lands within the Lake Mead NRA and were threatening public health and safety. The NPS letter also directed Defendant to remove his trespass livestock within sixty days or be subject to impoundment.

34. Defendant responded to the NPS letter with a letter dated January 4, 2012, in which he stated that his cattle had migrated from his ranch across to the west side of Lake Mead and that he had removed 165 head of cattle from the west side of Lake Mead and 36 head of cattle from the Gold Butte area. Defendant further indicated that "To my knowledge I could have as many as 20 head on the west side around Overton Beach area. I will put effort into removing those cattle."

35. In early February 2012, the BLM conducted another trespass count during which it found a total of approximately 600 head of cattle on area federal lands, including the New Trespass Lands. The NPS also undertook an aerial trespass count in February 2012, in which it detected additional cattle around the Overton Arm area of the Lake Mead NRA. The NPS sent a follow-up letter to Mr. Bundy on March 5, 2012, informing him that he still had at least forty head of cattle on NPS lands and that the cattle would be subject to impoundment if not removed.

36. Another overflight conducted by the BLM in late March 2012 detected approximately 790 cattle on area federal lands, including on the New Trespass Lands. These cattle included about 190 recently born calves.

37. Despite the 1999 Order to Remove, the trespass and impoundment notices sent by the BLM and NPS to Mr. Bundy, and the agencies' other continuing efforts to secure the removal of Mr. Bundy's cattle from area federal lands, Mr. Bundy has continued to graze his cattle on these lands and to allow his cattle to remain in trespass on these lands, including on the New Trespass Lands.

38. The trespass of Defendant's cattle on federal lands, including the New Trespass Lands, continues at present.

39. Upon information and belief, based on the previous unlawful practices of Defendant and Defendant's prior representations (including assertions that the BLM has no jurisdiction over the public lands), Defendant intends to continue to place or allow cattle to graze on area federal lands, including the New Trespass Lands, in violation of 43 U.S.C. §§ 315, 1752; 43 C.F.R. § 4140.1(b)(1); 16 U.S.C. § 3; and 36 C.F.R. § 2.60, indefinitely into the future.

**Injury from Trespassing Cattle**

40. Defendant has placed or allowed his livestock to graze on area federal lands, including the New Trespass Lands, in areas that are closed to all livestock grazing and that are managed for the protection of important cultural, archeological, natural, wildlife habitat, scenic, and other values.

41. Defendant has allowed his livestock to interfere with recreational and other designated public uses of the New Trespass Lands.

42. The prior and prospective damage caused and threatened to be caused by Defendant's unauthorized grazing on the New Trespass Lands includes but is not limited to injury to streams, springs, seeps, and wet meadows; damage to habitats that are critical for the survival and reproduction of many native wildlife and plant species, including federally listed desert tortoise; destruction and loss of biological soil crusts; disturbance, compaction, and erosion of soils; depletion of grasses and forbs and erosion that promotes the invasion of alien or exotic plant species; and contamination of water where people swim or otherwise recreate.  In addition, Defendant's unauthorized grazing has damaged and undone high priority restoration efforts undertaken within the past ten years within the Gold Butte ACECs to remove and replace invasive species with native species that provide better habitat for a number of species that are federally listed or at risk.

43. Defendant's unauthorized livestock grazing also poses a significant risk to public safety.  The trespass livestock have wandered onto public roads.  The federal agencies have received reports of vehicle collisions and near collisions.

44. Defendant also has unlawfully placed range improvements on the lands, such as corrals, tanks to store water, and water troughs for the trespass livestock.  These range improvements, and the concentration of livestock around the water sources, cause additional resource damage on the federal lands.

45. Plaintiff has no adequate remedy at law to address the continuous and persistent unlawful conduct by Defendant and is entitled to injunctive relief to enjoin Defendant's continuing trespass.

## FIRST CAUSE OF ACTION

### (TRESPASS)

46. The United States incorporates its previous allegations as though fully set forth herein.

47. Defendant has placed or allowed livestock to graze on the New Trespass Lands in violation of 43 U.S.C. § 1733(b), 43 C.F.R. §§ 4140.1 and 4150.1 (2005), 16 U.S.C. § 3, and 36 C.F.R. § 2.60.

48. Defendant is in trespass on the New Trespass Lands in violation of federal statutory and regulatory requirements.

## SECOND CAUSE OF ACTION

### (DECLARATORY JUDGMENT)

49. The United States incorporates its previous allegations as though fully set forth herein.

50. Defendant has placed or allowed livestock to graze on the New Trespass Lands in violation of 43 U.S.C. § 1733(b), 43 C.F.R. §§ 4140.1 and 4150.1 (2005), 16 U.S.C. § 3, and 36 C.F.R. § 2.60.

51. Plaintiff is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant has placed or allowed livestock to graze on the New Trespass Lands, and that Defendant is in trespass in violation of federal statutory and regulatory requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America requests that the Court enter an order and judgment against Defendant as follows:

A. For declaratory relief declaring that Defendant has placed or allowed his livestock to graze on the New Trespass Lands in violation of 43 U.S.C. § 1733(b), 43 C.F.R. §§ 4140.1 and 4150.1 (2005), 16 U.S.C. § 3, and 36 C.F.R. § 2.60;

B. For a permanent injunction prohibiting Defendant from placing or allowing unauthorized livestock to enter or be on the New Trespass Lands;

1     C. For a permanent injunction ordering Defendant to forthwith remove unauthorized livestock from the New Trespass Lands within thirty days;

    D. For a permanent injunction ordering that BLM and NPS may seize and remove Defendant's trespass livestock from the New Trespass Lands if Defendant fails to comply with this Court's order within thirty days of the entry of that order; and

    E. For such further relief as this Court deems just and proper.

DATED this 14th day of May, 2012.

                      IGNACIA S. MORENO, Assistant Attorney General

                      /s/ Thomas K. Snodgrass
                      THOMAS K. SNODGRASS,[2] Senior Attorney
                      U.S. Department of Justice
                      Environment and Natural Resources Division

                      DANIEL G. BOGDEN, United States Attorney
                      NADIA AHMED
                      Special Assistant United States Attorney

                      ATTORNEYS FOR THE UNITED STATES

---

[2] Thomas K. Snodgrass hereby enters a special appearance on behalf of Plaintiff United States and anticipates that a motion requesting authority for him to practice before this honorable Court in all matters relating to the above-captioned case will be filed shortly.  Mr. Snodgrass is an attorney with the U.S. Department of Justice, Environment and Natural Resources Division, and is a member in good standing of the Bar of the State of Colorado (Bar No. 31329).