# ATTACHMENT I



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

**JAN 2 1 2011**

In Reply Refer To:
Trespass Number NV–050–5–675
4150 (NVS0052)


CERTIFIED MAIL 7009 2820 0001 6804 3765 – RETURN RECEIPT REQUESTED

Cliven D. Bundy
P.O. Box 7175
Bunkerville, Nevada 89007

Dear Mr. Bundy:

On February 17, 1994, a final decision was issued to you canceling your grazing preference in its entirety. The decision also included an order to remove trespass livestock and a demand for payment of trespass damages. This decision found you knowingly, willfully, and repeatedly grazing livestock without authorization on the Bunkerville Allotment. On November 4, 1998, the United States District Court of Nevada denied your Motion to Dismiss, and ordered you to remove your livestock from the Bunkerville Allotment on or before November 30, 1998, and ordered that you are permanently enjoined from grazing livestock within the Bunkerville Allotment. The court further ordered that the United States shall be entitled to trespass damages in the amount of $200.00 per day per head for any livestock belonging to you remaining on the Bunkerville Allotment after November 30, 1998.

An article published in Las Vegas City Life on December 2, 2010, demonstrates that you are aware of your continued willful trespass. This letter serves to remind you that in addition to the above court order, you are violating the law(s) specified below and the regulation(s) approved by the Secretary of the Interior pursuant to the authority vested by said law.

      Taylor Grazing Act of June 8, 1934, as amended: Section 2, 48 Stat, 1270; 43 USC 315a.

      Federal Land Policy and Management Act, as amended, 43 USC 1752.

You are also in violation of the following regulation(s):

      43 CFR 4140.1 (b) (1)
      (1) Allowing livestock on or driving livestock across these lands:
         (i) Without a permit, lease or other grazing use authorization.

Violations, if continuing, must stop immediately and fees must be reconciled.

2

This letter is to provide you notice that the Bureau of Land Management is evaluating and calculating trespass damages according to the court order referenced above, and we will be notifying you of those damages.  Failure to resolve this ongoing trespass will result in further action to protect the interests of the United States.

Please contact Bob Ross, Field Manager, Las Vegas Field Office, at (702) 515-5199 or bob_ross@blm.gov with comments or questions.

Sincerely,

Mel M. Meier
Associate District Manager

# ATTACHMENT J



**Refi Rates Hit**
**3.22% APR***

Calculate New Payment

* Click for Terms & Conditions

| 30 year fixed rates | 20 year fixed rates | 15 year fixed rates | 10 year fixed rates | $125,000 Loan for $502*/mo. | $175,000 Loan for $691*/mo. | $250,000 Loan for $972*/mo. | $350,000 Loan for $1360*/mo. |

# CityLife

WWW.LVCITYLIFE.COM

## Endangered species

**Clark County's last cowboy squares off against the federal government over the fate of his cattle ranch and the desert tortoise**

by AMY KINGSLEY : AKINGSLEY@LVCITYLIFE.COM

BUNKERVILLE -- The cowboy is having a hard time gathering his herd. Cliven Bundy, a tall man in jeans, spurs that jangle when he walks, a button down shirt and legs slightly bowed from decades of sitting on horses, points out a line of hoof prints. It's the best he can do.

"As soon as you get the water, you see the wildlife," he says.

As if on cue, a covey of quail squirts out of a bush near a watering trough. In the distance, a cottontail skitters up the road. If only his cattle were as cooperative. A few hours out on the range, and only four head have graced us with a flash of their presence. As soon as they spotted the truck, they trotted into the hills.

That glimpse happened near another of Bundy's range improvements -- tanks and troughs that collect the spring water and deliver it to his beef. He's got them all over the Virgin River Valley, the Toquop and Key West ranges and up the side of Virgin Mountain.

This particular improvement sits in a lovely crease between brown hills. It consists of a concrete cap where the water emerges, and a giant tank with a small spigot where the water comes out in a constant crystal stream.

Bundy's ranching operation brings him out here all the time. He chases leaks in the pipe and generally minds the tank and trough, which is capped in metal mesh that keeps baby quail from tumbling in and drowning. Then, when he's done, he turns to his extracurricular project.

Bundy has been trying to preserve the original water tank, a concrete box no bigger than a bathtub. The original ranchers, who date to the 1860s, scratched their brands into the top. But gradually, time broke it apart and scattered the symbols across the desert floor. Slowly, meticulously, Bundy has been picking them up and putting them back together -- piecing together the puzzle of the history out here.

"Here is one of the artifacts of the cowboy," he says. "It's an old water trough, and you can see the brands marked into the concrete. These are from people who ran cattle with my grandpa."

It's a vestige of a forgotten economy, Bundy says. An industry that used to bring $100,000 in income every week to this community has now been virtually eliminated. And instead of honoring the area's cattle ranching history, the county and the federal government want to obliterate it, Bundy says. The BLM has three grazing authorizations in Clark County, but it's unclear whether any of them are active.

"There used to be 52 cattle ranchers in Clark County," Bundy says. "Then it dropped to a dozen or less. And now it's just me."


PHOTO: MAUREEN ADAMO
Cliven Bundy is the only cattle runner left in Clark County.


PHOTO: MAUREEN ADAMO
Bundy has been embroiled in a silent battle of wills with BLM over his cattle.

The old water tank dates back to an era when Bundy's grandfather and a dozen of his neighbors ran cattle up and down the hillsides. Now, Bundy is the only one left. He's the lone holdout from an era when cattle ranching dominated the Nevada economy -- and he's not even supposed to be here.

## Hardy traditions

For the last 17 years, Bundy has been illegally grazing his cattle on land owned by the Bureau of Land Management. It's an open secret on these hills. The bureau keeps a running log of all Bundy cattle spotted out on the range. The U.S. Park Service knows who to call when a calf turns up stuck in the mud near Lake Mead.

Every so often, a ranger may leave a message on his answering machine, or send a notice of violation, but Bundy never responds, and nothing ever happens. His neighbors have all gotten out of the business. But the outlaw Bundy continues to graze his cattle on the range, in open violation of federal statutes.

"I fired the BLM," he said. "I decided I did not need their management any more, and I wasn't going to pay them any more. I was paying them to manage my ranch, and they were actually trying to break me."

Bundy's silent protest of the BLM began in 1993, a few years after the U.S. Fish and Wildlife Service emergency listed the desert tortoise as an endangered species. That act drastically changed the relationship between federal land managers and cattle ranchers like Bundy.

The agency identified several threats to tortoise habitat. Urban development topped the list, and cattle ranching came in somewhere near the bottom. But growth seemed unstoppable, and cattle ranching was already on its way out. So Clark County adopted a desert conservation plan that ceded vast tracts of environmentally sensitive land in the southern part of the county to developers, in exchange for the elimination of cattle ranching in the areas near Bunkerville.

In December 1998, more than five years after Bundy stopped paying his grazing fees, Clark County bought the remaining grazing rights in the Bunkerville Allotment for $375,000 and retired them for the benefit of the desert tortoise. Bundy was not included in the negotiations.

Now, it is an area of critical environmental concern, off-limits to ranchers, off-roaders and miners. But Bundy's cattle still roam the hillsides, grazing on vegetation and occasionally making a brief stop at one of his watering stations.

Bundy will tell you his grazing is good for the land. His water tanks attract not only quail, but also chucker birds and deer. Conservationists insist the grazing isn't good for tortoise populations. Cattle and tortoises consume the same types of food, foraging on the desert grasses, chaparral and burrow sage that cling to the mountainsides.

"There is a lot of science that says there is a lot of competition between cattle and tortoises," said Rob Mrowka, conservation advocate for the Center for Biological Diversity. "The U.S. Fish and Wildlife Service has taken steps to reduce that conflict and that threat to the tortoise."

The courts have sided with Mrowka and the government. In the late 1990s, the U.S. District Court and the Federal Court of Appeals issued permanent injunctions against Bundy, and ordered him to pay damages in excess of $150,000. Neither decision had any affect on his operation. Bundy never paid his fines, and he never pulled his cattle off the land.

In a handful of memos, officials from the BLM expressed concern a confrontation with Bundy could turn into a violent repeat of Ruby Ridge. Since then, they've quietly documented the ongoing trespass, but done little to stop it.

Despite volumes of documentation and the court decisions that have gone against Bundy, the bureau would have to start from scratch if it wanted to do anything about Bundy's cattle, said Las Vegas District Manager Mary Jo Rugwell. She would like to gather a coalition of affected parties, including the county, state brand inspector, the park service, the U.S. Attorney's Office and private landholders in the area around Bunkerville.

"You would have to get all of the stakeholders together," Rugwell said. "Because it's occurring on a lot of other jurisdictions as well. It's going to take a while to do this."

It will also take a lot of political courage. The cattle grazing tradition that Bundy represents still carries a lot of cultural weight in some parts of Southern Nevada. Although he voted to buy out and retire other grazing permits in Bunkerville, Clark County Commissioner Tom Collins has publicly defended Bundy, and the county office in charge of desert conservation defers to the BLM on trespass issues.

But the simmering conflict between Bundy and the BLM is poised to flare again. If the effort to turn Gold Butte into a National Conservation Area is successful, the agency will have to address the trespass issue. Bundy's cattle regularly wander into Gold Butte, and the boundary would extend to the area surrounding his ranch.

## Strong roots

The Bundy family settled these parts in 1877. They were Mormon pioneers from Salt Lake City who accepted a mission to move south, first to Kolob, Utah, then the Arizona Strip before settling in Bunkerville, on a rolling plot of land

between the mountains and the Virgin River.

They immediately set about making improvements and running cattle on the open range. Cattle ranchers in the West needed more space than their eastern forebears. A cow can get just as much nourishment from the desert as she can from a pasture, but she needs about 100 acres to do it, Bundy said. His family branded the cattle and let them go.

The federal government didn't start regulating cattle ranching until the passage of the Taylor Grazing Act in 1934, which was in response to overgrazing on public lands.

Bundy may have earned a reputation as a foe of the federal government, but he speaks highly of the initial efforts to control grazing. Ranchers were organized into grazing districts, and the fees they paid went right back in to improving the range. Government officers erected fences and divvied up water rights. Most of their actions benefited serious ranchers and drove the two-bit players off the range.

The Bundy family also kept a small farm it operates to this day. Cliven Bundy plants heirloom melons in the fields at the bottom of his ranch. He and his wife also collect and sell local honey, as well as butter from their dairy cows.

Bundy grew up in a family of cattle ranchers, and he got his first cow when he was 5 years old.

"Then I turned around and sold him for two heifer calves, and I was in business," he said.

His herd eventually grew to 1,400 head, but has shrunk to about 500 head in recent years. His cows run wild on the range, foraging on browse and occasionally wandering as far as Lake Mead and Arizona. Bundy has an enormous amount of faith in the notoriously harsh desert land.

"You wouldn't think anything could survive out here," he said. "But they get all the nutrients they need out of the plants that grow out here."

The mother cows teach their babies what to eat. When they're about 10 months old, Bundy gathers them off the range and grain finishes them at his ranch until they are ready for market.

The meat he raises is not technically organic. But it's produced close to the land, without hormones or antibiotics. If it weren't for the tortoise issue, environmentally-minded consumers would probably praise Bundy for the sustainability of his operation. Not to mention the proximity. Steakhouses in Las Vegas regularly source their meat from overseas, moving it by air and sea, which requires a lot of carbon-producing fuel.

"I have always tried to raise them the natural way," he said. "I call it natural because it's not 100 percent organic. The goal is not to manage the cows too much, but instead to manage the water."

The cows aren't his only product. Locally, Bundy is known for his casaba melons, which he keeps in a series of bins near the entrance to his property. Payment is on the honor system. Buyers get three melons for $10, which they deposit in a coffee can near the gate.

Bundy's melons come from seeds that have been passed down for 140 years. When he started growing them with his mother as a boy, they needed twice-weekly watering. Now, he only waters them twice a year. He floods the fields once before he plants the seeds, getting the soil good and moist for the planting. Then he goes along the rows, placing the seeds in the ground and covering them with a hard cap of dry soil. That seals in the moisture. The seeds soak up the water, and send their roots out into the dirt. Like the cattle, the roots need to range far to get the nutrients they need.

The heat and deprivation concentrates the sweet flavor of the fruit. Bundy picks through his vines with a small pocket knife, raises a small casaba and sticks in the knife. He produces a wedge of snow white fruit that's sweeter than anything you'd find at the grocery store.

"We've got no quibble with his melon farming," Mrowka said. "And if he kept all his cattle on his property, it would be fine."

**Last stand**

Bundy has no intention of voluntarily bringing his cattle in from the range. He believes this wilderness is the people's land. That gives him the right to graze his cattle. Others can come in and have picnic or hike if they like. The off-road driving doesn't bother him much, even when it occasionally crosses paths with one of his herds. Public lands should be just that, he said. Clark County is making a grave mistake by supporting the creation of a conservation area at Gold Butte, which would restrict public access to people who can afford to pay a fee.

"If it's the king's forest, the king can make the rules," he said. "If it's the people's forest, we can better protect it and make it productive."

The BLM would like to reach a compromise with Bundy, instead of dragging the matter back through the courts. But it seems unlikely the rancher would willingly sit down with the agency. During the past 20 years, the two parties have fundamentally diverged in their opinions of how the land should be used, with the BLM lurching toward conservation,

and Bundy believing citizens should make constructive use of the land.

Although the BLM sent Bundy notices to remove his range improvements, the cattleman continues to maintain the pipes and tanks that allow him to keep his ranching operation going. Bundy responded to the BLM with a letter that asserted his rights to continue grazing on the land, granted under the 1934 Taylor Grazing Act.

Meanwhile, Mrowka and the Center for Biological Diversity have stepped up their efforts to convince the BLM to do something about the grazing situation. He would like the agency to confiscate the trespass cattle. During the past two years, he's sent several letters to the BLM with documentation of the cattle trespass, and even addressed it at a meeting of the Clark County Commission. Even though he is on the opposite side of the issue, Mrowka ironically identifies the BLM as a common enemy.

"Our fight is not with Cliven; it is with the federal government," he said. "They need to round up the trespass cattle and haul them off the site."

In the 1990s, the BLM worried a confrontation with Bundy could turn violent. In this era of anti-government sentiment, the bigger danger may be its political unpopularity. Even though the county has invested $375,000 to retire grazing rights, it seems to have little stomach for enforcing the ban on Bundy. Collins supports his right to graze. Marci Henson, the county employee in charge of the Desert Conservation Program, said the trespass was a BLM issue.

Forces other than the BLM have been shrinking Bundy's herds in recent years. The drought has taken its toll. During several dry spells, he and his wife have figured the end was near. That's usually when the rain falls, giving them a temporary reprieve. But he can't deny it's getting harder and harder to sustain a working cattle ranch on the withering hills. His cows are resourceful, but not miracle workers. If their food disappears, they will too.

The same drought is probably taking its toll on the desert tortoise. Despite the decline in grazing near Gold Butte, the tortoise population hasn't bounced back. Bundy said he spots about five or six a year -- a huge decrease from the number he saw as a boy, when cattle and sheep crowded the range.

Back in those days, Bundy used to follow his father out on the range, working the cattle and living off the land. He demonstrates his technique for starting a desert fire, dropping a dried yucca plant onto the dirt and topping it with several pieces of wood. He strikes a kitchen match on a small rock and slides it under the kindling. The fire burns fast and hot.

Bundy pulls two small steaks out of a cooler. It's the closest look he's had all day at his cattle. He slides the steaks onto a couple of forked sticks and sets them over the fire, where they drip fat and turn brown.

"I do not break any of Nevada's state laws," Bundy said. "But if you go to the U.S. Code, I guess everything I do is against the law. It's probably illegal to start this fire."

Bundy pulls a plastic bag full of dough from the cooler. It's a sourdough that's been in the family for generations. He pulls off a piece, wraps it around the stick, and thrusts it over the fire. When it's done, he squeezes a glob of honey butter -- made from tamarisk honey and dairy from his cows -- onto the charred bread, which is smoky on the outside and a little doughy inside.

"This is probably the last year we'll have honey," Bundy added.

The non-native tamarisk plants that produce the flowers for local honey have been targeted for elimination because they consume too much water. Bundy said he'll miss the plants, their yellow foliage and sweet honey. He kicks dirt over the last embers of the fire.

"I do good things here," he said. "I create something here. A commodity. An eatable commodity."

*Last updated on Thursday, December 2, 2010 at 12:09 am*

# ATTACHMENT K

 **United States Department of the Interior** 

BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

**JUN 0 8 2011**

In Reply Refer To:
4150 (LLNVS0000)
Trespass Number NV-050-3-647

Mr. Cliven Bundy
P.O. Box 7175
Bunkerville, NV 89007

Dear Mr. Bundy:

You are hereby notified that the Bureau of Land Management has conducted an investigation and evidence shows that you are in trespass. Please see the attached Notice of Trespass for more information.

Violations, if continuing, must stop immediately.

You are hereby ordered to remove all unauthorized livestock from the public lands within 10 days of receipt of this notice. Failure to comply with this trespass notice and order to remove will result in further action to protect the interests of the United States, and may include the impoundment of unauthorized livestock.

You are hereby ordered to permanently cease and desist from the violations charged.

Sincerely,

Mel M. Meier
Acting District Manager, Southern Nevada

Enclosure

Ex. 2 - Rugwell Dec. Att. K - Page 1 of 3

Form 9230-1
(July 1988)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

**TRESPASS NOTICE**

| | |
|---|---|
| Number | NV-050-3-647 |
| State | Nevada |
| District | Southern Nevada |
| Date | 06/08/2011 |

Mr. Cliven Bundy
P.O. Box 7175
Bunkerville, NV 89007

YOU ARE HEREBY NOTIFIED That the Bureau of Land Management has made an investigation and evidence tends to show that you are in trespass. We allege that you ☑ are violating ☐ may have violated ☐ have violated the law(s) specified below and the regulation(s) approved by the Secretary of the Interior pursuant to the authority vested in him by said law. Therefore, it is our opinion that you:

Have committed the following act(s):
Grazing cattle on public lands without an authorization.

Are in violation of the following law(s):
Taylor Grazing Act of 1934, as amended, 43 USC 315; Federal Land Policy and Management Act, as amended, 43 USC 1752.

And are in violation of the following regulation(s):
Title 43 Code of Federal Regulations 4140.1(b)1 which prohibits (1) Allowing livestock or other privately owned or controlled animals to graze on or be driven across these lands; (i) without a permit, lease or other grazing use authorization.

On the following-described land *(describe the area by legal subdivision if surveyed, or if unsurveyed, by concise reference to such natural landmarks as will clearly identify the area):*
Bunkerville Allotment
Toquop Sheep Allotment
Hen Springs Allotment
Mesquite Community Allotment
Billy Goat Peak Allotment
Gold Butte Allotment
Lower Mormon Mesa Allotment
Lake Mead National Recreation Area

(Continued on page 2)

1. ☑ Violations, if continuing, *must* stop immediately.

2. ☑ You are allowed 10   days from receipt of this notice to cease the alleged trespass operation.

3. ☑ If you have evidence or information which tends to show you are not a trespasser as we have alleged, you are allowed 10   days from receipt of this notice to present such evidence or information at the Bureau of Land Management office shown on the front of this form.

You are allowed 10   days from receipt of this notice to appear at the Bureau of Land Management office shown

on the front of this form to effect a settlement for trespass damages.

Failure to comply with this notice will result in further action to protect the interests of the United States. You are further advised that the authorized officer may refuse to issue a permit, lease, or license to a trespasser who has failed to make satisfactory arrangements to satisfy his liability to the United States, as provided in 43 CFR 4150.3e and 4170.1–1.   The officer may also refuse to sell timber or materials as provided in 43 CFR 9239.0–9.

_____
(Signature)

Acting District Manager, Southern Nevada
_____
(Title)

## CERTIFICATE OF SERVICE

I, Amber Pickens

CERTIFY That on the 8th   day of June                                  , 20 11        , I served written notice

on  Cliven Bundy

of  P.O. Box 7175 Bunkerville, NV 89007

the party's address of record, by a true copy of the within notice by   ☐ personal service   ☑ certified mail.  If by

certified mail, the envelope containing said notice bears registry stamp number 70010320000081793135    and return

receipt marked "for addressee only" has been requested.

_____
(Signature of Server)

Executive Assistant
_____
(Title)

Form 9230-1 (July 1988)

# ATTACHMENT L

PO Box 7175
Bunkerville, NV 89007

Bureau of Land Management
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130

June 17, 2011

RE: 4150 (LLNVS0000)
Trespass Number NV-050-3-647
Dated June 8, 2011

Thi i t´m l r                                    um  .

Th r    ıll  u h c                          l  m
   ı    m        th                       .

Rancher,

Cliven D. Bundy

In the County of ___Clark___, State of Nevada, Subscribed
and sworn to before me this _17_ day of _June_, 2011 by
_Cliven D Bundy_

Notary Signature and seal

CYNTHIA A. GOOD
Notary Public • State of Nevada
Appointment Recorded in Clark County
No. 99-51685-1 Expires January 15 2015

Ex. 2 - Rugwell Dec. Att. L - Page 1 of 2



CERTIFIED MAIL

7009 0080 0000 5239 3903

Bureau of Land Management
Southern N. Woistant Office
4701 N. Jersey Pine Avenue
Las Vegas, NV. 89154

# ATTACHMENT M



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

JUL 26 2011

In Reply Refer To:
4150 (LLNVS00000)
Trespass No. NV-050-3-647

CERTIFIED MAIL NUMBER: 7009 3410 0001 0398 7080
<u>RETURN RECEIPT REQUESTED</u>

NOTICE OF INTENT TO IMPOUND

Cliven D. Bundy
P.O. Box 7175
Bunkerville, NV 89007

Dear Mr. Bundy:

During a cattle count in March 2011 of the Gold Butte Area, we documented unauthorized cattle that belong to you grazing illegally on public lands that are closed to grazing. A Trespass Notice and Order to Remove livestock from the Bunkerville Allotment and surrounding allotments in the Gold Butte Area was sent to you by our office on June 8th, 2011 (Trespass No. NV-050-3-647). On June 20th, 2011 the BLM received a letter from you acknowledging your receipt of that Notice. Subsequent monitoring has shown that you have not removed these cattle as required.

This notice is to inform you that unauthorized livestock documented on the following allotments are subject to impound any time after 5 days from delivery of this notice: Bunkerville Allotment, Toquop Sheep Allotment, Billy Goat Peak Allotment, Lower Mormon Mesa Allotment, Upper Mormon Mesa, Virgin River Bottom, Azure Ridge, Mesquite Community Allotment, Hen Springs Allotment, Gold Butte Allotment, Lake Mead National Recreation Area, Flat Top Mesa, and Lime Spring. Furthermore, unauthorized livestock may be impounded without further notice any time within 12 months of delivery of this notice.

You will be notified in writing of the sale and the procedures by which the impounded livestock may be redeemed prior to the sale. If the livestock are not redeemed on or before the date and time fixed for their sale, they shall be offered at public sale to the highest bidder by the authorized officer or condemned and destroyed or otherwise disposed of, in accordance with state law. If you have any questions, the Southern Nevada District Office is reachable at (702) 515-5000.

**Authority**

The authority under which this impound is made is found in the following 43 CFR 4100 (10/01/05) citations:

| | |
|---|---|
| 4150.4-1(a) | Notice of Intent to Impound |
| 4150.4-2 | Impoundment |
| 4150.4-3 | Redemption |
| 4150.4-5 | Sale |

Sincerely,

FOR Mary Jo Rugwell
District Manager

# ATTACHMENT N

DVTOnline.com Classifieds                                          Page 1 of 2



4900 Legal Notices

### NOTICE OF INTENT TO IMPOUND

This is notice that any **UNAUTHORIZED** livestock grazing upon public lands or other lands
administered by the
Bureau of Land Management are violating 43 CFR 4140.1(b)(1)(i) and **may be impounded**.

#### The BLM may impound UNAUTHORIZED
livestock without further notice any time within the twelve (12) month period that begins five (5) days
after the publication and posting of this notice within the local area (43 CFR 4150.4-1(a) and (b) and 43
CFR 4150.4-2).

The areas affected by this notice are comprised of the public lands administered by the Bureau of Land
Management in the following allotments and areas.

Bunkerville Allotment
Mesquite Community Allotment
Toquop Sheep Allotment
Hen Springs Allotment
Billy Goat Peak Allotment
Gold Butte Allotment
Lower Mormon Mesa
Allotment
Lake Mead National
Recreation Area
Upper Mormon Mesa Flat Top Mesa
Virgin River Bottom Lime Spring
Azure Ridge

A map that shows that shows the locations of the above-named allotments may be obtained by
contacting the Bureau of Land Management at
4701 North Torrey Pines Drive, Las Vegas, NV 89130, or by calling
(702) 515-5000.

---

**Summons
Case No. 114600062
Judge Wallace A. Lee
Ellis Leon Nay,
Petitioner,
vs. Barbara Ann Nay,
Respondent.**

TO THE NAMED
BARBARA ANN NAY, Mesquite, Nevada, or at any other place where she may be properly served: A
petition for Divorce has been filed with the Sixth district Court of Sevier County, State of Utah.
YOU ARE HEREBY SUMMONED and
required to file an Answer in writing to the Petition for Divorce with the Clerk of the above-entitled court
at 895 East 300 North,
Richfield, Utah 84701, and to serve upon or mail to counsel for Ellis Leon Nay at 669 North Main,
Richfield, Utah 84701, a copy of said Answer within thirty (30) days of the date of this notice.
If you fail to do so,

Ex. 2 - Rugwell Dec. Att. N - Page 1 of 1
8/2/2011

# ATTACHMENT O



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

SEP 2 0 2011



In Reply Refer To:
Trespass Number NV-050-3-647
4150 (LLNVS00000)

CERTIFIED MAIL 7009 2820 0001 6804 4526 – RETURN RECEIPT REQUESTED

**FINAL DECISION**
**ORDER TO REMOVE**
**AND DEMAND FOR PAYMENT**

Cliven D. Bundy
P.O. Box 7175
Bunkerville, NV 89007

Dear Mr. Bundy:

In 1954, David Bundy (C/O Cliven Bundy), along with other permittees, was initially authorized to graze livestock on public lands in the Bunkerville Allotment (allotment) pursuant to grazing permits for ephemeral rangelands issued under the Taylor Grazing Act of 1934.

In 1973, David Bundy formally named you as his authorized representative to the Bureau of Land Management (BLM) in matters pertaining to grazing use on public land and other lands administered by the BLM.

During the early 1990s, the BLM developed management plans for the desert tortoise, a listed species under the Endangered Species Act, and its habitat, which includes most of the allotment. These plans imposed timing constraints on grazing authorizations within desert tortoise habitat. Accordingly, in 1993, BLM notified you that changes intended to protect the desert tortoise and its habitat would be incorporated into your grazing permits for the allotment.

Due to the nature of ephemeral rangelands, such as which occurs in the allotment, the BLM authorizes it to be used for grazing only upon application and following BLM confirmation that ephemeral forage is present and available for grazing use during the requested use period. Your last authorization to graze livestock on the allotment ended on February 28, 1993. You subsequently have never made application for another grazing authorization. However, after February 28, 1993, despite the lack of authorization, you continued to graze cattle on the allotment and refused to comply with the requirements that would enable you to legally graze

livestock on public lands, including making appropriate application, obtaining a grazing permit, and paying grazing fees when due.

Later in 1993, the BLM mailed you several letters that reiterated these requirements and requested that you comply with them. You responded with several "Administrative Notices of Intent" in which you stated your intent to continue to graze cattle in the allotment despite the lack of a permit to do so, and claimed that the United States has no authority to exercise jurisdiction over the allotment. Subsequently, on July 13, 1993, due to your lack of compliance with these requirements, the BLM issued a "Trespass Notice and Order to Remove" livestock. You failed to comply with this notice and order and continued to graze on public lands without authorization.

On January 24, 1994, the BLM served you with a Proposed Decision, Order to Remove, and Demand for Payment. This document outlined your violations of federal laws and regulations, and proposed to cancel your grazing preference in the Bunkerville allotment. On February 17, 1994, BLM served you with a Final Decision, Order to Remove and Demand for Payment.

In its February 17, 1994, Final Decision, the BLM assessed damages in the amount of $31,199.11 for trespass grazing. You did not appeal that decision, and in March and April of 1994, the BLM sent letters to you that demanded that you pay past due bills for these trespass damages and for previously unpaid grazing fees. You have never made any payment on these damages, and interest and fines continue to accumulate on this outstanding debt. You also did not cease your trespass grazing in the allotment.

In 1998, the United States filed a complaint in the United States District Court for the District of Nevada seeking injunctive relief and damages due to your continued trespass grazing on the public lands. In its opinion dated November 4, 1998, the District Court affirmed the United States' authority to manage grazing and use of the public lands. The Court also permanently enjoined you from grazing livestock on the allotment and ordered you to remove all livestock from the public lands by November 30, 1998. Additionally, the Court found that the United States was entitled to trespass damages in the amount of $200.00 per day per head for any livestock belonging to you that remained on the allotment after November 30, 1998. You appealed the District Court's Order to the United States Court of Appeals for the Ninth Circuit, which denied your appeal on May 10, 1999. When you still failed to comply with the District Court's order to remove your livestock from the public lands, the District Court on September 17, 1999, granted the United States' motion to enforce the permanent injunction, directing you to pay $4,123.06 for BLM's December 15, 1998 trespass detection flight and $1,377 as willful repeated trespass damages for 51 cattle on public lands from December 1, 1998 through December 31, 1998, and assessing you $45.90 per day for each day your livestock remained on public lands after January 1, 1999. You did not make payment or remove your livestock as directed by the District Court.

The BLM has continued to document your unauthorized livestock grazing and use of cancelled range improvements.

Trepass Incidents Documented from May 29, 2008 through March 5, 2011

Over the years, BLM staff have documented the presence of trespass livestock bearing your brand and/or ear marks on public lands while engaged in their regular duties.  Between May 2008 and March 2011, the following livestock owned by you were confirmed to be grazing on public lands without authorization:

| Date | Number of Cattle observed | Cattle with Brands or Ear Marks Registered to Cliven Bundy |
|---|---|---|
| 3/5/2011 | 7 | 5 |
| 2/27/2011 | 12 | 6 |
| 2/20/2011 | 2 | 1 |
| 2/12/2011 | 13 | 7 |
| 2/4/2011 | 15 | 4 |
| 1/30/2011 | 27 | 9 |
| 1/23/2011 | 1 | 0 |
| 1/22/2011 | 5 | 2 |
| 1/9/2011 | 8 | 5 |
| 1/8/2011 | 5 | 2 |
| 1/1/2011 | 11 | 10 |
| 12/26/2010 | 27 | 18 |
| 12/25/2010 | 14 | 8 |
| 10/24/2010 | 6 | 3 |
| 10/23/2010 | 13 | 7 |
| 10/9/2010 | 3 | 0 |
| 10/8/2010 | 8 | 2 |
| 7/19/2010 | 8 | 3 |
| 6/17/2010 | 3 | 1 |
| 6/12/2010 – 6/19/2010 | 10 | 9 |
| 5/31/2010 | 2 | 2 |
| 5/8/2010 | 12 | 5 |
| 4/30/2010 | 6 | 4 |
| 4/23/2010 | 7 | 3 |
| 3/10/2010 | 8 | 6 |
| 2/28/2010 | 5 | 2 |
| 2/21/2010 | 8 | 6 |
| 2/15/2010 | 15 | 8 |
| 2/14/2010 | 17 | 9 |
| 2/7/2010 | 9 | 6 |
| 2/16/2009 | 33 | 9 |
| 2/12/2009 | 12 | 4 |
| 2/9/2009 | 12 | 6 |

| Date | Number of Cattle observed | Cattle with Brands or Ear Marks Registered to Cliven Bundy |
|---|---|---|
| 2/7/2009 | 5 | 4 |
| 2/4/2009 | 26 | 16 |
| 1/31/2009 | 1 | 1 |
| 1/30/2009 | 14 | 6 |
| 1/18/2009 | 20 | 7 |
| 9/14/2008 | 12 | 7 |
| 7/31/2008 | 11 | 11 |
| 5/29/2008 | 2 | 1 |

Trespass NV-050-3-647 (March 21, 2011 – August 19, 2011)

The BLM conducted a cattle count from March 21-25, 2011, in the Gold Butte area, and observed many unauthorized cattle owned by you grazing on public (and other) lands that are closed to all livestock grazing.  During this count, the BLM positively identified 199 livestock[1] that bore your brand or ear mark grazing in trespass on public lands managed by the BLM. On June 8, 2011, the BLM sent you a "Trespass Notice and Order to Remove" livestock from the Bunkerville Allotment and surrounding allotments in the Gold Butte Area (Trespass No. NV-050-3-647). On June 20th, 2011, the BLM received a letter from you acknowledging your receipt of that Notice.

On July 25, 2011, when you failed to remove trespass livestock from the public lands, the BLM sent you a "Notice of Intent to Impound" unauthorized livestock in the Bunkerville Allotment, anytime within five days to one year after receipt of the Notice.

The BLM conducted another cattle count of the Gold Butte area on August 15-19, 2011, and confirmed that trespass cattle owned by you that the BLM observed in March 2011 still present on the public lands.  During this count, the BLM positively identified 35 cattle that bore your brand and/or ear mark grazing in trespass on public lands managed by the BLM.  These cattle remained on the public lands after the March 2011 cattle count despite BLM notices to you to remove those livestock from the federal lands.

Therefore, I have determined that you are in violation of the following statutes:

      Taylor Grazing Act of June 28, 1934, as amended;
      Section 2, 48 Stat. 1270; 43 U.S.C. 315a.

      Federal Land Policy and Management Act of October 21, 1976
      Section 303 and 402, 43 U.S.C. 1733 and 1152 respectively.

---

[1] Additional cattle were found during both the March and August 2011 Cattle Count. Many were estrays or feral livestock that did not have any brands or ear marks, and others could not be observed from all sides to determine ownership.

And that you are in violation of the following federal regulation:

43 CFR 4140.1 states:

"The following acts are prohibited on public lands and other lands administered by the Bureau of Land Management:

(b) Persons performing the following prohibited acts related to rangelands shall be subject to civil and criminal penalties set forth at 4170.1 and 4170.2:
(1) Allowing livestock or other privately owned or controlled animals to graze or be driven across these lands:
(i) Without a permit or lease and an annual grazing authorization.

These acts and violations have occurred and are occurring on the following former grazing allotments[2] and public lands[3]:

>Bunkerville Allotment
>Toquop Sheep Allotment
>Hen Springs Allotment
>Mesquite Community Allotment
>Billy Goat Peak Allotment
>Gold Butte Allotment
>Lower Mormon Mesa Allotment

You are hereby ordered to:

Remove all unauthorized livestock from public lands described above within 15 days of receipt of this notice.

In addition, I have determined that your continued trespass grazing of the public lands constitutes repeated willful trespass since you have been permanently enjoined from placing your livestock on public land and have nonetheless continued to graze these lands in willful disregard of an existing court order. In light of your continued repeated willful trespass grazing documented from May 2008 through August of 2011, I hereby demand payment in the amount of $292,601.50 to the United States within thirty (30) days from receipt of this notice. Monetary damages will continue to accumulate until this current trespass is settled.

The breakdown of trespass damages for repeated willful trespass # NV-050-3-647 (as documented for the period of March 21 through August 19, 2011) and for the trespasses documented between May 29, 2008, and March 5, 2011, is as follows:

---

[2] These former grazing allotments have been closed to all livestock grazing, with the exception of the Lower Mormon Mesa Allotment, which requires an active grazing permit to graze livestock.
[3] While this decision is limited to your trespass grazing on public lands managed by BLM, the March and August 2011 cattle counts also found your livestock grazing on the Lake Mead National Recreation Area, which is managed by the U.S. National Park Service.

| Trespass Fees (at the repeated willful rate) | $8,815.50[4] |
| Service Charge | $10.00 |
| Administrative Fees for investigation, detection and resolution of trespass | $283,776.00 |
| **Total Monetary Charges due to the U.S.** | **$292,601.50** |

For a further breakdown of fees please reference the enclosed preview bill.

Failure to comply and make payment within the time allowed shall result in further action to protect the interest of the United States as provided in 43 CFR 4170.1-1 (c). Enclosed is form 1371-21 "Notice of Actions in Event of Delinquency" which outlines the sequence of actions for delinquent accounts.

The authority for this decision is contained in Title 43 of the Code of Federal Regulations which states in pertinent parts:

4150.1 states:
"Violations of 4140.1(b)(1) constitutes unauthorized use.
(a) The authorized officer shall determine whether a violation is nonwillful, willful, or repeated willful.
(b) Violators shall be liable for damages to the United States for the forage consumed by their livestock, for injury to Federal property caused by their unauthorized use, and for expenses incurred in impoundment and disposal of their livestock and may be subject to civil penalties or criminal sanctions for such unlawful acts."

4150.2 states:
"Whenever it appears that a violation exists and the owner of the unauthorized livestock is known, written notice of unauthorized use and order to remove livestock by a specified date shall be served upon the alleged violator or agent of record, or both by certified mail or personal delivery. The written notice shall also allow a specified time from receipt of notice for the alleged violator to show that there has been no violation or make settlement under 4150.3."

4150.3 states:
"The authorized officer shall determine whether a violation is nonwillful, willful, or repeated willful. Where violations are repeated willful, the authorized officer shall take action under 4170.1-1(b) of this title. The amount due for all settlements shall include the value of the forage consumed as determined by paragraphs (a), (b), or (c) of this section. Settlement for willful and repeated willful violations shall also include the full value for all damages to the public

---

[4] Trespass fees in this decision are limited to livestock bearing your brand and/or earmark that were found in trespass on public lands managed by BLM. No trespass fees have been assessed for unauthorized livestock grazing on public lands if the livestock were not positively identified as bearing your brand and/or earmark. This decision also does not seek damages for trespass grazing by your livestock documented in March and August of 2011 within Lake Mead National Recreation Area, as any action to address such trespass would be pursued by the U.S. National Park Service.

land and other property of the United States; and all reasonable expenses incurred by the United States in detecting, investigating, resolving violations and livestock impoundment costs."

4150.3 (c) states:
 "For repeated willful violations: Three times the value of the forage consumed as determined in paragraph (a) of this section."

4170.1-1 states:
 "Whenever a nonpermittee or nonleasee violates 4140.1 (b) of this title and has not made satisfactory settlement under 4150.3 of this title the authorized officer shall refer the matter to proper authorities for appropriate legal action by the United States against the violator."

Appeals

A person who wishes to appeal to the Interior Board of Land Appeals must do so under 43 CFR 4.411 and must file in the office of the officer who made the decision (not the board), in writing to Mary Jo Rugwell, District Manager, Southern Nevada District Office, Bureau of Land Management, 4701 North Torrey Pines Drive, Las Vegas, NV 89130. A person served with the decision being appealed must transmit the notice of appeal in time to be filed in the office where it is required to be filed within thirty (30) days after the date of service.

The notice of appeal must give the serial number or other identification of the case and may include a statement of reasons for the appeal, a statement of standing if required by §4.412 (b), and any arguments the appellant wishes to make. Form 1842-1 (attached) provides additional information regarding filing an appeal.

No extension of time will be granted for filing a notice of appeal. If a notice of appeal is filed after the grace period provided in §4.401(a), the notice of appeal will not be considered and case will be closed by the officer from whose decision the appeal is taken. If the notice of appeal is filed during the grace period provided in §4.401(a) and the delay in filing is not waived, as provided in that section, the notice of appeal will not be considered and the appeal will be dismissed by the Board.

The appellant shall serve a copy of the notice of appeal and any statements of reasons, written arguments, or briefs under §4.413 on each adverse party named in the decision from which the appeal is taken and on the Office of the Solicitor, Pacific Southwest Regional Solicitor, U.S. Department of the Interior, 2800 Cottage Way, Room E-2753, Sacramento, CA 95825-1890. Service must be accompanied by personally serving a copy to the party or by sending the document by registered or certified mail, return receipt requested, to the address of record in the bureau, no later than 15 days after filing the document.

In addition, within thirty (30) days of receipt of this decision you have the right to file a petition for a stay together with your appeal in accordance with the regulation at 43 CFR 4.21. The petition must be served upon the same parties specified above.

Pursuant to 43 CFR 4.471(c), a petition for stay, if filed, must show sufficient justification based on the following standards:

> (1) The relative harm to the parties if the stay is granted or denied;
> (2) The likelihood of the appellant's success on the merits;
> (3) The likelihood of immediate and irreparable harm if the stay is not granted; and,
> (4) Whether the public interest favors granting the stay.

43 CFR 4.471 (d) provides that the appellant requesting a stay bears the burden of proof to demonstrate that a stay should be granted.

At the conclusion of any document that a party must serve, the party or its representative must sign a written statement certifying that service has been or will be made in accordance with the applicable rules and specifying the date of such service (43 CFR 4.422(c)(2)).

Sincerely,

Mary Jo Rugwell
Southern Nevada District Manager

Enclosures - 4:
Preview Bill
Breakdown of Current Charges
Form 1372-21 "Notice of Actions in Event of Delinquency"
Form 1842-1 "Information on Taking Appeals to the Interior Board of Land Appeals"

cc:   Nancy Zahedi
Office of the Solicitor
2800 Cottage Way, Room E-1712
Sacramento, California 95825

Bill Dickinson, Superintendent
Lake Mead National Recreation Area
601 Nevada Way
Boulder City, Nevada 89005

Scott Florence
BLM Arizona Strip District Office
345 East Riverside Drive
St. George, Utah 84790

Ken Visser, BLM Nevada State Office, LLNV930000

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

GRAZING BILL

## DUE DATE:   09/29/2011
## TOTAL DUE:  $292,601.50

|  |  |
|---|---|
| | 09/14/2011 |
| STATE | NV |
| OFFICE | LLNVS01000 |
| AUTH NUMBER | |
| PREFERENCE CD | |
| SCHEDULE NUMBER | |
| BILL NUMBER | R806206 |
| BILL DATE | 09/14/2011 |
| BILL CODE | 3 |

RETURN THIS PAGE WITH YOUR PAYMENT
SEND PAYMENT TO:

BUREAU OF LAND MANAGEMENT
LAS VEGAS FO
4701 N TORREY PINES
LAS VEGAS NV 89130-2301

CLIVEN BUNDY
PO BOX 7275
BUNKERVILLE NV 89007

# Preview Bill

THIS IS NOT AN OFFICIAL BILL. IT WAS PRODUCED BY ONE OF THE NON-PRODUCTION APPLICATIONS.

1

Ex. 2 - Rugwell Dec. Att. O - Page 9 of 15

09/14/2011

# Preview Bill

GRAZING SCHEDULE AND FEES:
BILL ID: R806206          BUNDY, CLIVEN

MANDATORY TERMS AND CONDITIONS

ALLOT NUMBER/NAME

| PASTURE | LIVESTOCK NUMBER | KIND | BEGIN PERIOD | END PERIOD | % PUB LAND | TYPE USE | AUMS | AUM COST | ST | FEE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| 02005 BUNKERVILLE | | | | | | | | | | |
| | 35 | C | 03/21/2011 | 08/19/2011 | 100 | R | 175 | $37.50 | NV | $6,562.50 |
| | 164 | C | 03/21/2011 | 03/24/2011 | 100 | R | 22 | $37.50 | NV | $825.00 |
| | 1 | C | 05/29/2008 | 05/29/2008 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 11 | C | 07/31/2008 | 07/31/2008 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 7 | C | 09/14/2008 | 09/14/2008 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 7 | C | 01/18/2009 | 01/18/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 13 | C | 01/30/2009 | 01/30/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 1 | C | 01/31/2009 | 01/31/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 16 | C | 02/04/2009 | 02/04/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 4 | C | 02/07/2009 | 02/07/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 6 | C | 02/09/2009 | 02/09/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 4 | C | 02/12/2009 | 02/12/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 9 | C | 02/16/2009 | 02/16/2009 | 100 | R | 1 | $39.00 | NV | $39.00 |
| | 6 | C | 02/07/2010 | 02/07/2010 | 100 | R | 1 | $40.50 | NV | $40.50 |
| | 9 | C | 02/14/2010 | 02/14/2010 | 100 | R | 1 | $40.50 | NV | $40.50 |
| | 8 | C | 02/15/2010 | 02/15/2010 | 100 | R | 1 | $40.50 | NV | $40.50 |
| | 6 | C | 02/21/2010 | 02/21/2010 | 100 | R | 1 | $40.50 | NV | $40.50 |
| | 2 | C | 02/28/2010 | 02/28/2010 | 100 | R | 1 | $40.50 | NV | $40.50 |
| | 6 | C | 03/10/2010 | 03/10/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 3 | C | 04/23/2010 | 04/23/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 4 | C | 04/30/2010 | 04/30/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 5 | C | 05/08/2010 | 05/08/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 2 | C | 05/31/2010 | 05/31/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 9 | C | 06/12/2010 | 06/19/2010 | 100 | R | 2 | $33.00 | NV | $66.00 |
| | 1 | C | 06/17/2010 | 06/17/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 3 | C | 07/19/2010 | 07/19/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 2 | C | 10/08/2010 | 10/08/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 7 | C | 10/23/2010 | 10/23/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 3 | C | 10/24/2010 | 10/24/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 8 | C | 12/25/2010 | 12/25/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 18 | C | 12/26/2010 | 12/26/2010 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 10 | C | 01/01/2011 | 01/01/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 2 | C | 01/08/2011 | 01/08/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 5 | C | 01/09/2011 | 01/09/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 2 | C | 01/22/2011 | 01/22/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 9 | C | 01/30/2011 | 01/30/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 4 | C | 02/04/2011 | 02/04/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 7 | C | 02/12/2011 | 02/12/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 1 | C | 02/20/2011 | 02/20/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 6 | C | 02/27/2011 | 02/27/2011 | 100 | R | 1 | $33.00 | NV | $33.00 |
| | 5 | C | 03/05/2011 | 03/05/2011 | 100 | R | 1 | $37.50 | NV | $37.50 |

CASE FILE COPY
THIS IS NOT AN OFFICIAL BILL. IT WAS PRODUCED BY ONE OF THE NON-PRODUCTION APPLICATIONS.

2

```
                                                                    09/14/2011
                                         --------
                      GRAZING SUBTOTALS      237                              $8,815.50
                        <XX> = AUMS NOT INCLUDED IN COLUMN TOTAL
```

OTHER FEES:

| TYPE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| ADMINISTRATIVE | ADMIN AND FEES, SEE ATTACHED BREAKDOWN | $283776.00 |
| | ADMINISTRATIVE SUBTOTAL | $283776.00 |
| | OTHER FEES TOTAL | $283776.00 |

FEE SUMMARY:

| ITEM | AMOUNT |
|------|--------|
| GRAZING FEES | $8,815.50 |
| SERVICE CHARGE . | $10.00 |
| ADMINISTRATIVE FEES | $283776.00 |
| TOTAL DUE | $292,601.50 |

OTHER TERMS AND CONDITIONS:

# Preview Bill

CASE FILE COPY
THIS IS NOT AN OFFICIAL BILL. IT WAS PRODUCED BY ONE OF THE NON-PRODUCTION APPLICATIONS.
3

## Summary of Current Charges – Trespass No. NV-050-3-647

| Type of Charge | Amount |
|---|---|
| Value of Forage Consumed – Repeated Willfull | $8,815.50 |
| Helicopter Flight Time | $44,542 |
| Administrative Costs for Cattle Count, Investigation, etc. (includes labor, vehicles, travel) | $239,234 |
| Service Charge | $10.00 |
| **TOTAL OWED** | **$292,601.50** |

Form 1371–21
(December 1983)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

NOTICE OF ACTIONS IN EVENT OF DELINQUENCY

If payment is not received within 30 days of the date of the enclosed bill, the following sequence of charges will be applied to your account:

1. Interest for late payment will be assessed for each day the payment is delinquent.

2. If payment becomes 60 days delinquent (60 days from the date of this bill), this debt may be submitted to a credit reporting agency (Credit Bureau).

3. An administrative charge (handling charge) will be added to *each* follow-up billing necessitated by your failure to pay on time.

4. Any fees incurred by utilizing a debt collection company will be billed you at the time the debt is referred to the debt collection company.

5. If this bill is allowed to become 90 days delinquent (120 days from the date of this bill), an additional administrative charge of 6% per year will be assessed for each day it is delinquent beyond the first 90 days.

(P.L. 97–365, 31 U.S.C. 951–953)

Form 1842-1
(September 2006)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

## INFORMATION ON TAKING APPEALS TO THE INTERIOR BOARD OF LAND APPEALS

DO NOT APPEAL UNLESS
1. This decision is adverse to you,
AND
2. You believe it is incorrect

### IF YOU APPEAL, THE FOLLOWING PROCEDURES MUST BE FOLLOWED

| | |
|---|---|
| **1. NOTICE OF APPEAL.............** | A person who wishes to appeal to the Interior Board of Land Appeals must file in the office of the officer who made the decision (not the Interior Board of Land Appeals) a notice that he wishes to appeal.  A person served with the decision being appealed must transmit the *Notice of Appeal* in time for it to be filed in the office where it is required to be filed within 30 days after the date of service.  If a decision is published in the FEDERAL REGISTER, a person not served with the decision must transmit a *Notice of Appeal* in time for it to be filed within 30 days after the date of publication (43 CFR 4.411 and 4.413). |
| **2. WHERE TO FILE**<br><br>NOTICE OF APPEAL............... | Attn: MaryJo Rugwell<br>Bureau of Land Management, Southern Nevada District Office<br>4701 N Torrey Pines Drive<br>Las Vegas, NV 89130 |
| WITH COPY TO<br>SOLICITOR... | Office of the Solicitor<br>Pacific Southwest Regional Solicitor, U.S. Department of the Interior<br>2800 Cottage Way, Room E-2753<br>Sacramento, CA 95825-1890 |
| **3. STATEMENT OF REASONS** | Within 30 days after filing the *Notice of Appeal*, file a complete statement of the reasons why you are  appealing. This must  be filed with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203.  If you fully stated your reasons for appealing when filing the *Notice of Appeal*, no additional statement is necessary (43 CFR 4.412 and 4.413). |
| WITH COPY TO<br>SOLICITOR.............................. | Office of the Solicitor<br>Pacific Southwest Regional Solicitor, U.S. Department of the Interior<br>2800 Cottage Way, Room E-2753<br>Sacramento, CA 95825-1890 |
| **4. ADVERSE PARTIES.................** | Within 15 days after each document is filed, each adverse party named in the decision and the Regional Solicitor or Field Solicitor having jurisdiction over the State in which the appeal arose must be served with a copy of: (a) the *Notice of Appeal*, (b) the Statement of Reasons, and (c) any other documents filed (43 CFR 4.413). |
| **5. PROOF OF SERVICE...............** | Within 15 days after any document is served on an adverse party, file proof of that service with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203.  This may consist of a certified or registered mail "Return Receipt Card" signed by the adverse party (43 CFR 4.401(c)). |
| **6. REQUEST FOR STAY...........** | Except where program-specific regulations place this decision in full force and effect or provide for an automatic stay, the decision becomes effective upon the expiration of the time allowed for filing an appeal unless a petition for a stay is timely filed together with a *Notice of Appeal* (43 CFR 4.21).  If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Interior Board of Land Appeals, the petition for a stay must accompany your *Notice of Appeal* (43 CFR 4.21 or 43 CFR 2801.10 or 43 CFR 2881.10).  A petition for a stay is required to show sufficient justification based on the standards listed below.  Copies of the *Notice of Appeal* and Petition for a Stay **must** also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (43 CFR 4.413) at the same time the original documents are filed with this office.  If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.<br><br>**Standards for Obtaining a Stay.**  Except as otherwise provided by law or other pertinent regulations, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards:  (1) the relative harm to the parties if the stay is granted or denied, (2) the likelihood of the appellant's success on the merits, (3) the likelihood of immediate and irreparable harm if the stay  is not granted, and (4) whether the public interest favors granting the stay. |

Unless these procedures are followed, your appeal will be subject to dismissal (43 CFR  4.402).  Be certain that all communications are identified by serial number of the case being appealed.

**NOTE:** A document is not filed until it is actually received in the proper office (43 CFR 4.401(a)).  See 43 CFR Part 4, Subpart B for general rules relating to procedures and practice involving appeals.

(Continued on page 2)

**43 CFR SUBPART 1821--GENERAL INFORMATION**

Sec. 1821.10  Where are BLM offices located?  (a) In addition to the Headquarters Office in Washington, D.C. and seven national level support and service centers, BLM operates 12 State Offices each having several subsidiary offices called Field Offices.  The addresses of the State Offices can be found in the most recent edition of 43 CFR 1821.10.  The State Office geographical areas of jurisdiction are as follows:

STATE OFFICES AND AREAS OF JURISDICTION:

Alaska State Office ---------- Alaska
Arizona State Office --------- Arizona
California State Office ------- California
Colorado State Office -------- Colorado
Eastern States Office --------- Arkansas, Iowa, Louisiana, Minnesota, Missouri
                               and, all States east of the Mississippi River
Idaho State Office ------------- Idaho
Montana State Office --------- Montana, North Dakota and South Dakota
Nevada State Office ----------- Nevada
New Mexico State Office ---- New Mexico, Kansas, Oklahoma and Texas
Oregon State Office ----------- Oregon and Washington
Utah State Office -------------- Utah
Wyoming State Office -------- Wyoming and Nebraska

(b) A list of the names, addresses, and geographical areas of jurisdiction of all Field Offices of the Bureau of Land Management can be obtained at the above addresses or any office of the Bureau of Land Management, including the Washington Office, Bureau of Land Management, 1849 C Street, NW, Washington, DC 20240.

(Form 1842-1, September 2006)

# ATTACHMENT P



## United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV  89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

In Reply Refer To: 4120
(NVS00000)

**APR 09 2012**

CERTIFIED MAIL:  70092820000168042231
RETURN RECEIPT REQUESTED

Cliven D. Bundy
P.O. Box 7175
Bunkerville, NV 89007

<u>Trespass Decision and Order to Remove</u>

Dear Mr. Bundy:

The Bureau of Land Management (BLM) has determined that you have placed range improvements on public lands without authorization and is directing you to remove these unauthorized range improvements from the public lands.

**Background**

On February 17, 1994, the BLM, Las Vegas Field Office issued a Final Decision cancelling your ephemeral grazing lease for the Bunkerville Allotment.  However, you have continued to graze the Bunkerville Allotment and other federal lands in the Gold Butte Area as described in the BLM's September 20, 2011 decision.

On April 2, 2008, the BLM, Las Vegas Field Office issued you a Notice of Cancellation Decision  that cancelled your range improvement permit and cooperative agreements for the Bunkerville Allotment.  Your response to that decision was forwarded as an appeal to the Interior Board of Land Appeals, which affirmed the BLM's decision on December 22, 2008.

During recent inspections of the public lands in the Gold Butte Area, the BLM found range improvements have been placed on public lands to maintain your trespass livestock.  These range improvements were never authorized to be placed on the public lands.

**Trespass Decision and Order to Remove Trespass Range Improvements**

Your Section 4 range improvement permit was canceled and you failed to remove all materials as required under 43 CFR 4140.1(a)(4) and (5). The BLM has also recently found additional range improvements that have been placed or constructed on public lands in the Gold Butte area without authorization since the 2008 Cancellation Decision. Any unauthorized occupancy or use of public lands constitutes a trespass under 43 CFR 9239.7.1.

You have thirty (30) days from your receipt of this letter to remove all new range improvements within the area defined as: north boundary of T.13.S, west boundary of R.67.E, south boundary of T.20.S, east boundary of R.71.E, and as shown on the enclosed map.

If you fail to remove these unauthorized improvements, the BLM may remove the trespass range improvements from these public lands. The BLM may also charge you for the costs of removal and rehabilitation under 43 CFR 2808.11(a)(3).

**Appeals**

A person who wishes to appeal to the Interior Board of Land Appeals must do so under 43 CFR 4.411 and must file in the office of the officer who made the decision (not the Board), in writing to Mary Jo Rugwell, District Manager, Southern Nevada District Office, 4701 North Torrey Pines Drive, Las Vegas, NV 89130. A person served with the decision being appealed must transmit the notice of appeal in time to be filed in the office where it is required to be filed within 30 days after the date of service. The notice of appeal must give the serial number or other identification of the case and may include a statement of reasons for the appeal, a statement of standing if required by subpart 4.412(b), and any arguments the appellant wished to make. Form 1842-1 (attached) provides additional information regarding filing an appeal.

No extension of time will be granted for filing the notice of appeal. If a notice of appeal if filed after the grace period provided in subpart 4.401(a), the notice of appeal will not be considered and the office from whose decision the appeal is taken will close the case. If the notice of appeal is filed during the grace period provided in subpart 4.401(a) and the delay in filing is not waived, as provided in that section, the notice of appeal will not be considered and the Board will dismiss the appeal.

The appellant shall serve a copy of the notice of appeal and any statements of reason, written arguments, or briefs under subpart 4.413 on each adverse party named in the decision from which the appeal is taken and on the Office of the Solicitor, Pacific Southwest Regional Solicitor, U.S. Department of the Interior, 2800 Cottage Way, Room E-2753, Sacramento, California 95825-1890. Service must be accompanied by personally serving a copy to the party or by sending the document by registered or certified mail, return receipt requested, to the address of record in the bureau, no later than 15 days after filing the document.

In addition, within 30 days of receipt of this decision you have the right to file a petition for a stay of the decision together with your appeal in accordance with the regulations at 43 CFR

4.21.  The petition must be served upon the same parties specified above.  Should you wish to file a petition for stay, the appellant shall show sufficient justification based on the following standards:

> (1) The relative harm to the parties if the stay is granted or denied.
> (2) The likelihood of the appellant's success on the merits.
> (3) The likelihood of immediate and irreparable harm if the stay is not granted, and
> (4) Whether the public interest favors granting the stay.

43 CFR 4.471(d) provides that the appellant requesting a stay bears the burden of proof to demonstrate that a stay should be granted.

At the conclusion of any document that a party must serve, the party or its representative must sign a written statement certifying that service has been or will be made in accordance with the applicable rules and specifying the date and manner of such service (43 CFR 4.422(c)(2)).

Sincerely,

Mary Jo Rugwell
District Manager

Enclosures:    Form 1842-1
               Map of boundary area

Form 1842-1
(September 2006)

# UNITED STATES
## DEPARTMENT OF THE INTERIOR
## BUREAU OF LAND MANAGEMENT

## INFORMATION ON TAKING APPEALS TO THE INTERIOR BOARD OF LAND APPEALS

### DO NOT APPEAL UNLESS
1. This decision is adverse to you,
### AND
2. You believe it is incorrect

### IF YOU APPEAL, THE FOLLOWING PROCEDURES MUST BE FOLLOWED

| | |
|---|---|
| **1. NOTICE OF APPEAL**............... | A person who wishes to appeal to the Interior Board of Land Appeals must file in the office of the officer who made the decision (not the Interior Board of Land Appeals) a notice that he wishes to appeal. A person served with the decision being appealed must transmit the *Notice of Appeal* in time for it to be filed in the office where it is required to be filed within 30 days after the date of service. If a decision is published in the FEDERAL REGISTER, a person not served with the decision must transmit a *Notice of Appeal* in time for it to be filed within 30 days after the date of publication (43 CFR 4.411 and 4.413). |
| **2. WHERE TO FILE**<br><br>**NOTICE OF APPEAL**............... | Attn: MaryJo Rugwell<br>Bureau of Land Management, Southern Nevada District Office<br>4701 N Torrey Pines Drive<br>Las Vegas, NV 89130 |
| **WITH COPY TO SOLICITOR...** | Office of the Solicitor<br>Pacific Southwest Regional Solicitor, U.S. Department of the Interior<br>2800 Cottage Way, Room E-2753<br>Sacramento, CA 95825-1890 |
| **3. STATEMENT OF REASONS** | Within 30 days after filing the *Notice of Appeal*, file a complete statement of the reasons why you are appealing. This must be filed with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. If you fully stated your reasons for appealing when filing the *Notice of Appeal*, no additional statement is necessary (43 CFR 4.412 and 4.413). |
| **WITH COPY TO SOLICITOR**............... | Office of the Solicitor<br>Pacific Southwest Regional Solicitor, U.S. Department of the Interior<br>2800 Cottage Way, Room E-2753<br>Sacramento, CA 95825-1890 |
| **4. ADVERSE PARTIES**............... | Within 15 days after each document is filed, each adverse party named in the decision and the Regional Solicitor or Field Solicitor having jurisdiction over the State in which the appeal arose must be served with a copy of: (a) the *Notice of Appeal*, (b) the Statement of Reasons, and (c) any other documents filed (43 CFR 4.413). |
| **5. PROOF OF SERVICE**............... | Within 15 days after any document is served on an adverse party, file proof of that service with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. This may consist of a certified or registered mail "Return Receipt Card" signed by the adverse party (43 CFR 4.401(c)). |
| **6. REQUEST FOR STAY**............ | Except where program-specific regulations place this decision in full force and effect or provide for an automatic stay, the decision becomes effective upon the expiration of the time allowed for filing an appeal unless a petition for a stay is timely filed together with a *Notice of Appeal* (43 CFR 4.21). If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Interior Board of Land Appeals, the petition for a stay must accompany your *Notice of Appeal* (43 CFR 4.21 or 43 CFR 2801.10 or 43 CFR 2881.10). A petition for a stay is required to show sufficient justification based on the standards listed below. Copies of the *Notice of Appeal* and Petition for a Stay must also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (43 CFR 4.413) at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.<br><br>**Standards for Obtaining a Stay.** Except as otherwise provided by law or other pertinent regulations, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards: (1) the relative harm to the parties if the stay is granted or denied, (2) the likelihood of the appellant's success on the merits, (3) the likelihood of immediate and irreparable harm if the stay is not granted, and (4) whether the public interest favors granting the stay. |

Unless these procedures are followed, your appeal will be subject to dismissal (43 CFR 4.402). Be certain that all communications are identified by serial number of the case being appealed.

**NOTE:** A document is not filed until it is actually received in the proper office (43 CFR 4.401(a)). See 43 CFR Part 4, Subpart B for general rules relating to procedures and practice involving appeals.

Ex. 2 - Rugwell Dec. Att. P - Page 4 of 6

(Continued on page 2)

**43 CFR SUBPART 1821--GENERAL INFORMATION**

Sec. 1821.10   Where are BLM offices located?   (a) In addition to the Headquarters Office in Washington, D.C. and seven national level support and service centers, BLM operates 12 State Offices each having several subsidiary offices called Field Offices.  The addresses of the State Offices can be found in the most recent edition of 43 CFR 1821.10.  The State Office geographical areas of jurisdiction are as follows:

**STATE OFFICES AND AREAS OF JURISDICTION:**

Alaska State Office ---------- Alaska
Arizona State Office --------- Arizona
California State Office ------- California
Colorado State Office -------- Colorado
Eastern States Office --------- Arkansas, Iowa, Louisiana, Minnesota, Missouri
                                and, all States east of the Mississippi River
Idaho State Office ------------- Idaho
Montana State Office --------- Montana, North Dakota and South Dakota
Nevada State Office ----------- Nevada
New Mexico State Office ---- New Mexico, Kansas, Oklahoma and Texas
Oregon State Office ----------- Oregon and Washington
Utah State Office -------------- Utah
Wyoming State Office -------- Wyoming and Nebraska

(b) A list of the names, addresses, and geographical areas of jurisdiction of all Field Offices of the Bureau of Land Management can be obtained at the above addresses or any office of the Bureau of Land Management, including the Washington Office, Bureau of Land Management, 1849 C Street, NW, Washington, DC 20240.

(Form 1842-1, September 2006)



Gold Butte
Project Boundary

# ATTACHMENT Q



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Southern Nevada District Office
4701 N. Torrey Pines Drive
Las Vegas, NV 89130
http://www.blm.gov/nv/st/en/fo/lvfo.1.html

APR 03 2012

In Reply Refer To:
4150 (LLNVS00000)

CERTIFIED MAIL 7009 2820 0001 6804 2348 – RETURN RECEIPT REQUESTED

Cliven Bundy
P.O. Box 7175
Bunkerville, NV 89007

Dear Mr. Bundy:

The Bureau of Land Management (BLM) issued you a Notice of Intent to Impound on July 26, 2011, after your livestock were found grazing on public lands within the Gold Butte area without authorization, in areas that are closed to grazing. Subsequent livestock checks have confirmed that your livestock remain on the public lands and that you remain in violation of a permanent injunction that was issued by the United States District Court for the District of Nevada in 1998.

I am writing to inform you that the BLM will contact you after the cattle are removed from the public lands, and you will have an opportunity to claim any cattle that bear your brand or other registered marking at a specified time and location. Any cattle you that claim must be kept off and will not be allowed to graze on public lands.

If you have any questions during the impoundment operations, please contact me at (702) 515-5000.

Sincerely,

Mary Jo Rugwell
District Manager

Ex. 2 - Rugwell Dec. Att. Q - Page 1 of 1

# ATTACHMENT R

# CLIVEN D. BUNDY

P.O. BOX 7175
BUNKERVILLE, NV  89007
702-346-5564

April 7, 2012

## CONSTRUCTIVE NOTICE AND LIEN

TO:   **DAVE CATTOOR**, individually
TO:   **SUE CATTOOR**, individually
TO:   **TROY CATTOOR**, individually
TO:   **SANDY CATTOOR**, individually
TO:   **CATTOOR LIVESTOCK ROUNDUP, INC. Nevada and/or Utah**
TO:   **ALL PARTIES RELATED THERETO**; including but not limited to - hired laborers, sub-contractors, partner interests, financial institutes, mortgage holders, legal assistants, all others aiding and abetting with each or all listed above

RE:   **OPERATION WITHIN THE COUNTY OF CLARK, BUNKERVILLE MOUNTAIN, VIRGIN RIVER, MORMON MESA, AND TOQUOP AREAS OF BUNDY RANCH 80 MILES NORTHEAST OF LAS VEGAS, NEVADA**

--------------------------------------------------------------------------------------------------

This will serve as official notice that there is a volatile situation currently taking place within the County of Clark.  The Department of Interior, its agents, servants and/or employees are illegally acting outside the scope and course of their delegated authority and jurisdiction and are currently trying to restrain Cliven Bundy from exercising his preemptive rights within the above referenced ranch.

While Cliven Bundy is not asserting any accusatory statement directly against the Cattoors or their companies as to their being hired to confiscate his property, (NOTE:  the definition of property, includes and encompasses personal property, cattle and/or any domestic livestock, land and equipment) it is of the utmost importance that he advise that should you take part in any confiscation of the above property, Mr. Bundy and his heirs, et al. will institute an action against all parties, individually, who take or have taken an active role in said confiscation.  There will be liens upon any and all property and accounts.

Once again, this is to be considered constructive notice that there currently is an action pending and that should you choose to take any adverse action against Cliven Bundy or his property, the appropriate legal remedies will be sought immediately.  This will not necessarily preclude the filing of criminal complaints with the proper jurisdictional authority.

Cliven Bundy will do whatever it takes to protect his property and rights and liberty and freedoms and those of, We the People, of Clark County Nevada.

STATE OF NEVADA
COUNTY OF CLARK
This instrument was acknowledged by
me on this 9 day of April
by Larrane Plaisted

LARRAINE PLAISTED
Notary Public ● State of Nevada
Appointment Recorded in Clark County
No: 96-34960-1 Expires February 1, 2014